# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:16-po-00183 |
| Plaintiff, | : | |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| DANIELLE BUTLER, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

### I. Introduction

Danielle Butler was driving within a federal enclave near Wright-Patterson Air Force Base when a patrolman with base security forces pulled her over due to her alleged violation of Ohio traffic law. The Government asserts that for various reasons—including the smell of alcohol emanating from Butler—"the patrolman asked [Butler] to consent to Standardized Field Tests." (Doc. #15, *PageID* #36). Butler allegedly agreed to take the test, but things did not go well and the patrolman detained her.

The Government states, "[F]ollowing standard protocol, [Butler] was read the Federal Implied Consent Law taken from Section 3118 of Title 18 of the United States Code, which put her on notice that a refusal to provide a valid sample of her breath for testing would result in suspension of driving privileges on federal property." (Doc. #15, *PageID* #s 36-37). She was then given several opportunities to take a breathalyzer test. She allegedly refused.

Butler contends that the officers gave her inadequate notice of the consequences of her refusal to take a breathalyzer test because they invoked the notice requirements set forth in the federal implied-consent statute, 18 U.S.C. § 3118, rather than the more detailed notice mandated by Ohio Rev. Code §§ 4111.19(A)(2)(b) and 4111.192. This, she concludes, violated the Assimilative Crimes Act (ACA) and her rights under the Due Process Clause of the Fifth Amendment to the Constitution. The Government maintains that the notice the officers provided Butler did not violate the ACA or right to due process.

To place the parties' arguments in context requires information about the charges pending against Butler, the federal and Ohio DUI refusal-to-test statutes, and the Assimilative Crimes Act.

## II. The Superseding Information

Count 1 of Superseding Information charged Butler with driving under the influence of alcohol, as a second offense within six years, in violation of Ohio Rev. Code § 4511.19(A)(1)(a), as incorporated into federal criminal law by the ACA, 18 U.S.C. §§ 7, 13.

Count 2 of a Superseding Information is also grounded on the ACA. It charges Butler with DUI in violation of Ohio Rev. Code § 4511.19(A)(2). It alleges that she committed a DUI offense within twenty years of being previously convicted of a DUI offense under Ohio Rev. Code § 4511.19(A)(2). Count 2 also accuses Butler of refusing to take a breathalyzer test after a law enforcement officer advised her "in accordance with 18 U.S.C. § 3118(a) of the consequences of a refusal to submit to said [breathalyzer] test

2

…." (Doc. #5, *PageID* #8).

## III.    DUI Refusal-To-Test Statutes

The federal DUI refusal-to-test statute, 18 U.S.C. § 3118, provides that a person who refuses to submit to a breathalyzer test, "after having been first advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle upon the special maritime and territorial jurisdiction of the United States during a period of a year commencing on the date of arrest upon which such test or tests was refused…." 18 U.S.C. § 3118(b).  This notice did not indicate to Butler that her refusal to take the test might subject her to increased penalties, unlike the Ohio criminal law under which she is charged.

Butler, as indicated above, is charged with violating Ohio Rev. Code § 4511.19(A)(2).[1]  "Its enactment shows the [Ohio] legislature's concern with the problems of both repeat drunk drivers and chemical-test refusals.  The [Ohio] General Assembly addressed these problems by enhancing the sentence for a DUI conviction when the driver refuses to be tested and has previously been convicted of a DUI." *State of Ohio v. Hoover*, 123 Ohio St.3d 418, 424 (2009).  The essential elements of this criminal offense are a DUI conviction within 20 years, operation of a motor vehicle while under the influence of alcohol or drugs, and a refusal to submit to a chemical or breathalyzer test. *Id*. at 421.  Ohio Rev. Code § 4511.19(A)(2).

---

[1] In Ohio, "Any person who operates a vehicle…, upon a highway…, used by the public for vehicular traffic shall be deemed to have given consent to a chemical test or tests of the person's …, breath…." Ohio Rev. Code § 4511.191(a)(2).

3

This Ohio statute also requires officers to advise the arrested DUI suspect "in accordance with section 4511.192 of the Revised Code…." An arrested DUI suspect in these circumstances must be informed of the consequences of refusing to take a breathalyzer test. The statute specifically instructs officers to tell the suspect, among other things, "if you refuse to take a chemical test, you will face increased penalties if you are subsequently convicted of the state OVI." Ohio Rev. Code § 4511.192(B). The federal refusal statute does not similarly notify a DUI suspect that a refusal to test can lead to "increased penalties." *See* 18 U.S.C. § 3118.

With these two notice requirements—one federal; one state—potentially in play, the ACA guides the way forward.

## IV. The ACA

The ACA "assimilates into federal law, and thereby makes applicable on federal enclaves such as Army [and Air Force] bases, certain criminal laws of the State in which the enclave is located." *Lewis v. United States*, 523 U.S. 155, 158 (1998). Its directive, although wordy, is straightforward:

> Whoever within or upon any [federal enclave] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, ... shall be guilty of a like offense and subject to like punishment.

18 U.S.C. § 13(a).

"The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Lewis*, 523 U.S. at 160 (citing and quoting parenthetically *Williams v. United States,* 327 U.S. 711, 718-19 (1946) ("ACA exists 'to

4

fill in gaps' in federal law where Congress has not 'define[d] the missing offenses.'"))
(other citations omitted). "Under the Act, if there is no federal criminal law on point, and if a defendant's conduct would have been a state-law crime but for the fact that it was committed on federal territory, it 'becomes a federal offense….'" *United States v. Pego*, 567 F. App'x 323, 329 (6th Cir. 2014) (quoting, in part, *United States v. Couch*, 65 F.3d 542, 543 (6th Cir. 1995)).

On the negative side, the ACA does not assimilate state procedural or evidentiary law. *United States v. Murphy*, 3:08po101, 2012 WL 1021710, *7-8 (S.D. Ohio 2012) (Rice, D.J.).

**V.     Discussion**

Butler argues that the ACA required the officers to provide her with Ohio's DUI refusal-to-test notice set forth in Ohio Rev. Code § 4511.192—particularly the potential increased penalties—because (1) the ACA incorporates an entire state's criminal law, both offenses and punishments; (2) the ACA does not contemplate selective incorporation—*i.e.*, the Government cannot charge her under Ohio's implied-consent law without providing her with Ohio's mandatory notice; and, (3) the ACA requires uniformity between state laws and any newly assimilated federal crime.

The Government contends that the officers correctly provided Butler with federal notice, under 18 U.S.C. § 3118, of the consequences flowing from her refusal to take a breathalyzer test. The Government argues that Count 2 of the Superseding Information properly assimilates Ohio's DUI refusal-to-test statute, Ohio Rev. Code § 4119.19(A)(2), and that the ACA did not require the officers to provide Butler with the Ohio notice under

5

Ohio Rev. Code § 4511.192 because its requirements are procedural or administrative, not substantive.

Resolving this debate begins with a preliminary issue: Is there a gap in federal criminal law when an arrested DUI suspect refuses to take a breathalyzer test? The answer is yes.

"Driving under the influence of alcohol within the special maritime and territorial jurisdiction of the United States is not directly actionable under the federal criminal code." *United States v. Rutherford*, 1:15CR321, 2016 WL 3574332, *2 (M.D. Ala. 2016). The ACA fills this gap by incorporating Ohio's criminal statutory prohibitions against DUI. *See id.* (incorporating, through the ACA, Alabama's criminal DUI statutes.); *e.g., Montjoy*, 2012 WL 1021710, at *1 (affirming DUI conviction under Ohio Rev. Code § 4511.19(A)(1)(d) when DUI occurred on Wright Patterson Air Force Base).

This gap in federal criminal law exists even though 18 U.S.C. § 3118 seems to cover the situation at issue here: an arrested DUI suspect who alleged refused to take a breathalyzer test on Wright Patterson Air Force Base. Although § 3118 addresses such problems, it is a procedural and administrative statute, not a criminal statute. One U.S. District Court has cogently explained:

> [T]he loss of driving privileges [under 18 U.S.C. § 3118(b)] appears to be an administrative sanction rather than a subject for prosecution. It is automatically triggered by a qualifying individual's refusal to take a breath or other physiological sobriety test. Rather than being imposed after a judicial hearing, the suspension of driving privileges for one year "commenc[es] on the date of arrest upon which such test or tests was refused."

6

*United States v. Williams*, 629 F.Supp.2d 539, 543 (E.D. Va. 2009) (quoting, in part, 18 U.S.C. § 3118). *Williams* also reasoned:

> Section 3118 also differs from most criminal statutes in the words it uses to describe the sanction: the offending driver "shall be denied the privilege of operating a motor vehicle upon the special maritime and territorial jurisdiction of the United States." 18 U.S.C. §3118(b). The denial of a *privilege* within a limited geographical area can be distinguished from the more obviously punitive sanctions of most criminal statutes, which deprive individuals of property, liberty, or both.

*Id.*; *see Moore*, 2011 WL 6754027, at *2 ("if, in enacting [§ 3118], Congress had wanted to make refusal a criminal rather than a civil offense, it easily could have done so. It chose not to."). Because federal criminal law has an administrative but not a criminal DUI refusal-to-test statute, a gap appears in federal criminal law that the ACA may fill with state law. *See Lewis*, 523 U.S. at 160 ("The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves."); *see, e.g.,* 2008 WL 1021710

To fill this gap and charge Butler with criminal DUI refusal to test, the Government invokes the ACA and Ohio Rev. Code § 4111.19(A)(2). This is in line with the ACA because under § 4111.19(A)(2) is a criminal statute accompanied by an administrative procedure. Under this Ohio statute, "'Both an ALS [Administrative License Suspension] and a criminal prosecution may result from driving under the influence of drugs or alcohol and refusing to take the chemical test. After a DUI conviction, however, the ALS terminates, and the license suspension becomes part of the DUI sentence." *Hoover*, 123 Ohio St.3d at 423-24. The Government, therefore, did not

7

violate the ACA by incorporating the criminal components of § 4511.19(A)(2) into the charges it brings against Butler. *See Lewis*, 523 U.S. at 160.

With the ACA having gathered Ohio's criminal DUI refusal-to-test statute, did the ACA also gather its notice requirements? More specifically: Did the ACA require the officers to provide Butler with notice in compliance with Ohio Rev. Code §§ 4511.19(A)(2) and 4511.192 or are these notice requirements procedural or administrative, and, therefore not incorporated by the ACA?

The Government is correct that the notice requirements of §§ 4511.19(A)(2) and 4511.192 are procedural not substantive. These notice requirements themselves do not describe forbidden criminal conduct. Instead, they describe steps that officers in Ohio must take after arresting a DUI suspect in order to affect an automatic administrative suspension. What follows afterward is "[a]n administrative license suspension … an automatic consequence of a refusal to take a chemical test." *Hoover*, 123 Ohio St.3d at 423. Administrative features are also seen in the notice requirements themselves. The officer must immediately notify the refusal suspect—"on behalf of the registrar of motor vehicles…."—that "the person's Ohio driver's…, license … is suspended immediately…." Ohio Rev. Code § 4511.192(D)(1)(a). The officer must notify the suspect that he may appeal the license suspension at his or her initial appearance or within 30 days after the initial appearance. *Id*. An officer's compliance with the notice requirements of Ohio Rev. Code § 4511.192 causes an automatic administrative license suspension, without judicial authorization, at least until the suspect's appeal at his or her initial appearance.

8

Even if an Ohio judge vacates the automatic license suspension at or soon after the initial appearance, the defendant still faces the criminal charge under Ohio Rev. Code § 4511.19(A)(2) unless and until the judge dismisses this criminal charge. This is because of the distinction between the procedural-notice steps an officer must take and the substantive elements of the crime § 4511.19(A)(2) forbids. The Ohio Supreme Court has not included notice of any kind within the essential elements of a charge under § 4511.19(A)(2). Instead, "[t]here are three elements of a charge brought pursuant to R.C. 4511.19(A)(2): (1) a DUI conviction within 20 years of the current violation; operation of a motor vehicle while under the influence of alcohol or drugs, and (3) a refusal to submit to a chemical test while under arrest for the current DUI." *Hoover*, 123 Ohio St.3d at 421. Consequently, proof of these three elements beyond a reasonable doubt results in a criminal conviction under Ohio Rev. Code § 4511.19(A)(2). And, a criminal conviction may arise under this statute when an officer fails to comply with the notice requirements in § 4511.192. During a criminal trial, many Ohio courts will not exclude evidence of an arrested DUI suspect's refusal "[m]erely because the form [read by the officer] did not comply with the statutory mandates under … [§] 4511.191." *State v. O'Neill*, 140 Ohio App.3d 48, 57 (2000) (collecting cases). This strongly shows that the requirements of § 4511.191-.192 are procedural and administrative rather than part of the substantive elements the prosecution must prove to show a violation of Ohio's criminal DUI refusal statute.

Lastly, Officers in Ohio have the option of not asking an arrested DUI suspect to submit to a breathalyzer test. *See* Ohio Rev. Code § 4511.192(C). When this occurs, the

9

officer must take other steps to secure the automatic administrative suspension of the arrested suspect's driver's license, including seizing the license and immediately forwarding it to the court in which the suspect will appear. These administrative procedures are far and apart from the substantive criminal offense described in Ohio Rev. Code § 4511.19(A)(2).

What about the Due Process Clause of the Fifth Amendment? Little needs to be said here because of the distinction Ohio law draws between criminal and administrative violations of Ohio Rev. Code § 4511.19(A)(2). *See Hoover*, 123 Ohio St.3d at 423-24. The procedural notice requirements of this statute attach to the administrative license suspension, not the criminal charge pending against Butler. And, the notice the officers provided her under federal law, 18 U.S.C. § 3118, informed her that she faced a one-year suspension of her driver's license on federal enclaves. No more was needed because she did not face an administrative suspension of her license under Ohio Rev. Code § 4511.192. Once the officers released Butler from custody, her driver's license was not administratively suspended outside Wright Patterson Air Force Base, *see* 18 U.S.C. § 3118(b). Because Butler does not presently face an administrative license suspension in this case under Ohio Rev. Code § 4511.19(A)(2), no fundamental unfairness arises from the notice the officers provided her under 18 U.S.C. § 3118. Lastly, if the Ohio registrar of motor vehicles suspends her license as a result of her pending charge in the present case under § 4511.19(A)(2), Ohio law provides due process to her by permitting an appeal of the suspension in state court. *See* Ohio Rev. Code § 4511.192(D)(1)(a).

Accordingly, the arguments Butler raises in her Brief and supporting memoranda (Doc. #s 15, 17) lack merit.

September 11, 2018

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge